IN UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ELIZABETH STRICKLIN, *formerly known as* ELIZABETH NOFFSINGER, *on behalf of herself and others similarly situated*,

Plaintiff,

v.

FIRST NATIONAL COLLECTION BUREAU, INC.,

Defendant.

Case No. 3:10-cv-01027-JPG-SCW

## **MEMORANDUM & ORDER**

This matter comes before the Court on the parties' cross-motions for judgment. Defendant First National Collection Bureau, Inc., ("First National") filed a Motion for Judgment on the Pleadings or in the Alternative Summary Judgment (Doc. 15) and a Memorandum in Support (Doc. 16) to which Plaintiff Elizabeth Stricklin filed a Response (Doc. 20). Stricklin then filed a Motion for Partial Summary Judgment and Memorandum in Support (Doc. 25) for summary judgment as to First National's liability to which First National filed a Memorandum in Opposition (Doc. 29).

## **BACKGROUND**

I. Factual

The facts are not in dispute. Stricklin allegedly had a debt of $230.54 from a prior account with Sprint Nextel Corporation. The holder of that debt, Jefferson Capital Systems, LLC, then placed the debt with First National in order to collect the money allegedly owed by Stricklin. First National sent a collection notice to Stricklin on August 6, 2010 in which it stated the balance owed, the name of the current creditor, the name of the original creditor (stated as

1

"Sprint Services"), the dispute process, and a "settlement offer" discounting the debt 60%. The August 6th letter offered for the payment to be made in three separate payments of $30.74 with each payment due within thirty days of the last payment. Stricklin did not respond to this letter and then received a similar notice on October 8, 2010. The October 8th letter contained the same information as above but was titled SETTLEMENT OFFER and gave a 70% reduction of the debt, offering four payments of $17.29 with the first payment to be received by October 29, 2010. Both letters also included payment coupons to send in with the payments but only the October letter included specific due dates for the payments on the coupons. The letters both state Stricklin may pay by credit card but a credit card payment requires a $50.00 minimum payment and there is a fee of $5.00 per $150.00. Finally, both letters state First National is not obligated to renew the offer if Stricklin does not make the payments in the time required.

Stricklin had a Sprint Nextel Corporation account in 2005 or 2006 but did not remember being delinquent on that account or seeing the company referred to as "Sprint Services." Stricklin contacted an attorney who is now representing her in this matter. Her counsel contacted First National and requested the true name of the original creditor and a copy of Stricklin's agreement with that creditor in the context of this litigation but it was not provided.

II. Procedural

Stricklin filed suit against First National on December 20, 2011. She filed an amended complaint on January 25, 2011 which is now the operative pleading in this case (Doc. 10). In the amended complaint, Stricklin states she is bringing suit on behalf of all similarly situated consumers in Illinois, Ohio, Kentucky, Missouri, Indiana, and Wisconsin. She alleges that First National violated the Fair Debt Collection Practices Act ("FDCPA") in its attempt to collect the debt from Stricklin. 15 U.S.C. § 1692 *et seq*. In support of this, Stricklin states in the amended

complaint that the debt was time-barred by 47 U.S.C. § 415 and therefore it was unlawful for First National to attempt to collect it. She also claims First National used deceptive means to attempt to collect the debt, including: (1) failing to accurately identify the original creditor, (2) failing to disclose the amount owed, (3) deceiving Stricklin by using the words "settlement offer" into thinking there was litigation against her, and (4) deceiving Stricklin to hide the fact the debt was time-barred.

First National filed the current motion for summary judgment or in the alternative summary judgment on April 14, 2011 (Doc. 15). In support of its prayer in the alternative, First National refers to an affidavit and two exhibits to the affidavit which were submitted with its answer (Doc. 11). First National claims it is entitled to judgment because it complied with the FDCPA and accurately identified the Creditor owed, the amount owed, and argues that a collection of a debt which is time-barred is not a violation of the FDCPA. Further, First National argues the FDCPA provides a remedy which Stricklin has not employed. In response, Stricklin argues the motion should not be converted to summary judgment because First National has failed to attach the affidavit and exhibits to which it refers. On the merits, Stricklin argues the counter of First National's claims, namely that the means used were deceptive and violations of the FDCPA.[1]

Stricklin then filed her motion for summary judgment (Doc. 25). In her motion for summary judgment, Stricklin argues there were five violations of the FDCPA which warrant judgment being entered for the plaintiff. The five violations are: (1) misidentification of the original creditor, (2) failure to state the amount of the debt being collected because of "transaction fees," (3) failure to indicate total due, (4) failure to identify to whom the debt was

---

[1] Given the repetition of both parties' arguments and the nuances pertaining to each alleged violation, the Court will more fully flesh out each argument while reviewing the argument in light of the proper standard below.

owed, and (5) implication there was ongoing litigation. In response, First National restates its arguments it has not violated the FDCPA. The Court turns to these arguments now.

## ANALYSIS

I.    Method of Review

First National titles its motion as a Motion for Judgment on the Pleadings or Alternatively for Summary Judgment (Doc. 15). First National asks the Court to convert the motion to one for summary judgment in order to use an affidavit attached to its answer (Doc. 11-1) and two exhibits (Doc. 11-1A, Doc. 11-1B). Stricklin argues repeatedly that these documents have not been entered into the record; however, they are in the record and can be found attached to Document 11 on the docket sheet. The letters at issue are not attached to the plaintiff's complaint but can only be found in the Affidavit and Exhibit to Affidavit attached to First National's Answer (Doc. 11).

The decision whether to convert a motion to dismiss into a motion for summary judgment is left to the discretion of the court. *See Levenstein v. Salafsky,* 164 F.3d 345, 347 (7th Cir.1998). If the Court wishes to consider evidence outside of the pleadings themselves, such as the very letters at issue, it is necessary to convert this motion to one for summary judgment. Federal Rules of Civil Procedure 12(d). The Seventh Circuit has held that if the document is central to the litigation, it can be submitted by either party without converting to summary judgment but goes on to limit the exception to contracts. *Tierney v. Vale*, 304 F.3d 734, 738-39 (7th Cir. 2002). Further,

> the purpose of requiring conversion from Rule 12(b) or Rule 12(c) to Rule 56, if matters outside the pleadings are considered by the court, is to make sure that each party has notice of evidence that the opposing party wants to present in support of his claim or defense; reference in the pleading to the evidence furnishes that notice.

*Id.* (citing *Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991)).

4

The Court notes discovery in this matter has been stayed (Doc. 26) but neither party will be prejudiced by proceeding to summary judgment. The parties agreed to stay discovery and the facts of this case are not in dispute. Both parties have moved for summary judgment. The only question is whether the letters First National mailed to Stricklin violated the FDCPA. Stricklin was surely on notice that First National would present the letters she is claiming violated the FDCPA as evidence and in fact submitted the letters with her own Motion for Summary Judgment (Doc. 25-1). The Court will examine the letters themselves and the briefs submitted by the parties to determine the outcome. As the plaintiff in this matter has filed a motion for summary judgment and the defendant's motion was briefed as a motion for summary judgment by both parties, the Court has decided treat the defendant's motion as a motion for summary judgment in order to efficiently resolve this dispute.

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396. Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a

genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 689, 692 (7th Cir. 2000). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252. On cross-motions for summary judgment, "[w]e therefore apply the traditional standard that summary judgment will not lie unless, construing all inferences in favor of the party against whom the motion is made, no genuine issue of material fact exists." *I.A.E., Inc. v. Shaver,* 74 F.3d 768, 774 (7th Cir. 1996).

II. Alleged Violations of the FDCPA

    a. Standard for Determining Whether the FDCPA Governs

The FDCPA applies to debt collectors attempting to collect debts from consumers. 15 U.S.C. § 1692. A consumer is defined by the Act as "any natural person obligated or allegedly obligated to pay any debt." *Id.* at 1692a(3). The FDCPA further defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the…subject of the transaction [is] primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). Stricklin's motion for summary judgment states there is no doubt the FDCPA applies to the situation at hand. First National concedes in its response that "while [First National] is normally a debt collector as defined by 15 U.S.C. § 1692a(6), it has insufficient information and knowledge to admit or deny whether it acted as debt collector as defined by 15 U.S.C. § 1692a(6) in this matter." It goes on to state Stricklin's assertion First National falls

6

within the FDCPA "is contested." (Doc. 29, p. 7). First National did not present any further evidence it is not a debt collector in this matter and admitted it normally is a debt collector. The only evidence the Court is able to glean from the pleadings is from Stricklin's affidavit in which she states she had a cellular telephone with to Sprint Nextel Corporation. Simply stating First National "contested" the issue is not sufficient to defeat the allegation it is within the scope of the FDCPA. First National did not provide evidence it was a phone for business purposes or anything other than "personal, family or household purposes." 15 U.S.C. § 1692a(5).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26. Here, as the plaintiff claims to not know anything about the debt at all, First National was in the best position and had the most to gain from putting forth evidence the debt was not covered by the FDCPA. When First National wrote its own motion for summary judgment (Doc. 15), it did not raise the argument it was not covered under the FDCPA and thus the nonmoving party for that motion, Stricklin, did not have the opportunity to contest it. It was only when Stricklin stated affirmatively in her motion for summary judgment (Doc. 25) that First National was within the scope of the FDCPA that First National raised the issue in its response (Doc. 29). It is not enough, however, for First National to "simply rest" upon its allegation that it is contested. It needed to present specific facts and it failed to do so. *Celotex,* 477 U.S. at 322-26. The Court finds that First National was acting as a "debt collector" within the meaning of the FDCPA and therefore the FDCPA governed its behavior.

b. Standard for Violations

The FDCPA "was designed to protect against the abusive debt collection practices likely to disrupt a debtor's life." *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 343 (7th Cir .1997). Section 1692g (a) of the FDCPA provides that a debt collector's initial communication with the consumer, or a written notice provided five days after the initial communication, must provide the following information:

> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). Although the FDCPA "does not say in so many words that the disclosures required by it must be made in a nonconfusing manner ... it is implicit that the debt collector may not defeat the statute's purpose by making the required disclosures in a form or within a context in which they are unlikely to be understood by the unsophisticated debtors who are the particular objects of the statute's solicitude." *Bartlett v. Heibl,* 128 F.3d 497, 500 (7th Cir.1997). The Seventh Circuit has gone so far as to say if the mandatory information "is not communicated to the debtor, or if it is provided in a manner that is 'confusing' to the consumer, § 1692g has been violated." *McMillan v. Collection Professionals Inc.,* 455 F.3d 754, 758 (7th Cir. 2006).

In order to determine if the collection letters violate the FDCPA as alleged by the plaintiff, the Court must examine the letters from the standpoint of the "unsophisticated consumer or debtor." *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414-415 (7th Cir. 2005) (citing *Fields v. Wilber Law Firm, P.C.,* 383 F.3d 562, 564-66 (7th Cir. 2004)). "While the unsophisticated debtor is considered "uninformed, naive, or trusting," he is nonetheless deemed to possess "rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences." *Fields*, 383 F.3d at 564-66 (internal quotations omitted). The unsophisticated-debtor standard is an objective one and is not the same as the already rejected least-sophisticated-debtor standard; accordingly, the Court "must disregard unrealistic, peculiar, bizarre, and idiosyncratic interpretations of collection letters." *Durkin,* 406 F.3d at 414; *see also Pettit v. Retrieval Masters Creditors Bureau, Inc.,* 211 F.3d 1057, 1060 (7th Cir. 2000); *Gammon v. GC Servs., L.P.,* 27 F.3d 1254, 1257 (7th Cir. 1994).

A mere claim of confusion is not enough: a plaintiff must show that the challenged "language of the letters unacceptably increases the level of confusion." *Johnson v. Revenue Mgmt. Corp.,* 169 F.3d 1057, 1060 (7th Cir. 1999) (emphasis omitted). Under this standard, a plaintiff's proclamations of being confused are not sufficient: a collection letter cannot be confusing as a matter of law or fact "unless a significant fraction of the population would be similarly misled." *Pettit,* 211 F.3d at 1060; *see also Taylor v. Cavalry Inv., L.L.C.,* 365 F.3d 572, 574-75 (7th Cir. 2004). As the Seventh Circuit has previously stated, "the FDCPA protects the unsophisticated debtor, but not the irrational one." *White v. Goodman,* 200 F.3d 1016, 1020 (7th Cir. 2000).

"In some situations, when an FDCPA violation is so "clearly" evident on the face of a collection letter, a court may award summary judgment to the FDCPA plaintiff." *Durkin,* 406

9

F.3d at 415; *see also Avila v. Rubin,* 84 F.3d 222, 226-27 (7th Cir. 1996); *Chauncey v. JDR Recovery Corp.,* 118 F.3d 516, 518-19 (7th Cir. 1997). Speculation that a collection letter confuses the unsophisticated debtor is not enough for an FDCPA plaintiff to survive an opposing debt collector's summary judgment motion. *Id; see also Pettit,* 211 F.3d at 1061; *Jenkins v. Heintz,* 124 F.3d 824, 831 (7th Cir. 1997). Therefore, if the letter itself does not plainly reveal it would be confusing to a significant portion of the population, the plaintiff must present evidence beyond the letter and beyond her own self-serving assertions in order to create a genuine issue of material fact for trial and avoid summary judgment. *See Taylor,* 365 F.3d at 574-75; *Chuway v. Nat'l Action Fin. Servs.,* 362 F.3d 944, 948-49 (7th Cir. 2004); W*alker v. Nat'l Recovery, Inc.,* 200 F.3d 500, 503-04 (7th Cir. 1999). Using "a carefully designed and conducted consumer survey" can satisfy the need for additional evidence. *Durkin,* 406 F.3d at 415; *see also Taylor,* 365 F.3d at 575; *Chuway,* 362 F.3d at 948; *Pettit,* 211 F.3d at 1062; *Walker,* 200 F.3d at 501, 503. A plaintiff can also use an expert witness to establish a genuine issue of material fact. *See Pettit,* 211 F.3d at 1062.

    c. Analysis

In her motion, Stricklin argues the five alleged violations are violations as a matter of law. Stricklin therefore does not put forward any extrinsic evidence to support her position such as a consumer survey or expert testimony. *See Pettit,* 211 F.3d at 1062. Rather, she depends upon the violations being plainly revealed by the language on its face that it would be confusing to a significant portion of the population. *See* Taylor, 364 F.3d at 574-575. The Court will examine each allegation below.

    i. Misidentification of Original Creditor

The FDCPA requires the debt collector to inform the indebted party of the name and

address of the original creditor if the debtor requests it within thirty days of receiving the debt collection notice. 15 U.S.C. §1692g(b). First of all, section 1692g(a) does not require a creditor to disclose the name of the "original creditor" but the name of the creditor "to whom the debt is owed." In this case, that is clearly identified in the collection letter as Jefferson Capital Systems, LLC, who purchased the debt from Sprint Nextel Corporation. In addition, First National provided the name of the "original" creditor as well as the current creditor. Stricklin argues that because First National incorrectly named the original creditor as "Sprint Services," rather than "Sprint Nextel Corporation," she is entitled to summary judgment. The Court does not agree.

"For extrinsic evidence to be unnecessary, the stated name of the creditor must be plainly false, deceptive, confusing, or misleading to an unsophisticated consumer." *Bode v. Encore Receivable Management, Inc.,* 2007 WL 2493898, 5 (E.D. Wis. 2007) (citing *Durkin,* 406 F.3d at 415). The test for determining whether a debt collector violated §1692e is objective, "turning not on the question of what the debt collector knew but on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer." *Turner,* 330 F.3d at 995. In *Bode,* the debt collector misnamed Capital One Services Inc., as Capital One Bank. The court held "given the similarity of the names "Capitol One Services, Inc." and "Capitol One Bank," the stated name of the creditor was not plainly false or confusing on its face, and a reasonable finder of fact could conclude that the letter would not deceive or mislead an unsophisticated consumer." *Bode*, 2007 WL 2493898, 5.

Stricklin rests her argument on an unpublished case. *See Schneider v. TSYS Total Debt Management, Inc.,* 2006 WL 1982499 (E.D. Wis. 2006). In *Schneider*, Schneider filed a complaint alleging the FDCPA was violated when the debtor failed to completely state the name

11

of the original creditor on the collection letter. *Id.* at *1. The debt collector moved to dismiss the action for failing to state a claim and the court denied the motion to dismiss holding:

> when a complaint alleges that a dunning letter is confusing, and thus a violation of § 1692g, the plaintiff has stated a recognizable legal claim; no more is necessary to survive a Rule 12(b)(6) motion." *Id.* at *3 (citing *McMillan,* 2006 WL 1867483 at *2; *Marshall-Mosby v. Corporate Receivables, Inc.,* 205 F.3d 323, 326-27 (7th Cir.2000) ("[A] FDCPA complaint survives a motion to dismiss under Rule 12(b)(6) simply by alleging that a dunning letter was confusing.")). This is because whether the unsophisticated debtor would be confused is a fact-based question, and accordingly, "dismissal is typically not available under 12(b)(6), which is appropriate only when there is no set of facts consistent with the pleadings under which the plaintiff could obtain relief." *McMillan,* 2006 WL 1867483 at *2.

*Id.* at *3. *Schneider* is entirely distinguishable from the case at hand as Stricklin herself filed the motion for summary judgment. *Schneider* did not hold that misnaming an original creditor is a violation of the FDCPA, but rather, that misnaming an original creditor is sufficient to move past a defendant's motion to dismiss. *See id.* The court considered Schneider may present factual evidence of the confusion which would support her claim. *Id.* In the present matter, Stricklin has chosen not to present any extrinsic evidence but instead rely on the letter itself to plainly reveal a violation.

Using the unsophisticated consumer standard, the Court believes Stricklin is attempting to have her cake and eat it too. *Fields*, 383 F.3d at 564-66. First, as an unsophisticated consumer she was confused by "Sprint Services" because she did not do business with an electrician in Elk Grove, Illinois. Stricklin bases this confusion, however, on looking up Sprint Services on the Illinois Secretary of State website business search. The Court does not find this claim credible as it does not believe an "unsophisticated consumer," who is "uninformed, naive, or trusting," would use the Illinois Secretary of State website in the first place. *See Veach v. Sheeks,* 316 F.3d 690, 692-93 (7th Cir. 2003). Rather, Stricklin has manufactured her "confusion." She certainly has not shown a significant portion of the population would be confused. *See id.*

Sprint Nextel Corporation is a publicly well-known company and an unsophisticated consumer who in fact had a cellular telephone contract with Sprint Nextel Corporation, like Stricklin, would not have been confused by the misidentification. Further, if Stricklin was truly confused as to the original creditor, she was invited to request the information regarding the original creditor per the instructions on the very letter she claims confused her and in accordance with the FDCPA. Finally, the Court does not believe First National sent the letter knowing it would cause significant confusion to Stricklin, rather, like in *Bode,* a reasonable person could find the name would not deceive or mislead an unsophisticated consumer. *Bode*, 2007 WL 2493898, 5.

    ii. Failure to State the Amount of the Debt being Collected because of "Transaction Fees"

A debt collector is required to state the amount it is attempting to collect. 15 U.S.C. § 1692g(a). It must state it clearly enough that the recipient is likely to understand it. *Bartlett v. Heibl,* 128 F.3d 497, 500-01 (7th Cir. 1997); *Avila v. Rubin,* 84 F.3d 222, 226 (7th Cir. 1996); *Terran v. Kaplan,* 109 F.3d 1428, 1431-32 (9th Cir. 1997); *Miller v. Payco-General American Credits, Inc.,* 943 F.2d 482, 483-84 (4th Cir. 1991). If the letter is attempting to collect more than the "amount due," it must use the "safe harbor language" the Seventh Circuit suggested in *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.,* 214 F.3d 872, 875 (7th Cir. 2000). The safe harbor language informs the debtor of the current balance but that there may be interest and fees which accrue daily and gives a phone number the debtor can call to get the current balance. *Id.* First National did not use this language but did include a number Stricklin could call with any questions. First National claims that because it was only attempting to collect the amount due, it did not need this language. Stricklin claims that because First

National charged a credit card transaction fee of $5.00 per $150.00 charged to a credit card, it was attempting to collect more than the amount due and therefore needed the safe harbor language.

In *Chuway*, the Seventh Circuit examined when the safe harbor language was needed. *Chuway v. National Action Financial Services, Inc.*, 362 F.3d 944, 947 (7th Cir. 2004). The debt collector stated the amount due but then also stated "for your most current balance information…" call the debt collect and gave a phone number. *Id.* at 947. The Seventh Circuit held,

> if the letter had stopped after the "Please remit" sentence, the defendant would be in the clear. But the letter didn't stop there. It went on to instruct the recipient on how to obtain "your most current balance information." If this means that the defendant was dunning her for something more than $367.42, it's in trouble because the "something more" is not quantified.

*Id.* The Court does not find the present situation to be like that in *Chuway*. The total amount due was clearly stated as $230.54. The letter provided the opportunity for Stricklin to pay via credit card. It stated there was a $5.00 transaction fee for credit card use per $150.00. The letter also stated there was a $50.00 minimum to pay by credit card. Stricklin contends this is attempting to collect more than the total debt and was confusing and misleading. The Court does not agree.

Every consumer deals with credit card transaction fees or minimums to use a credit card in daily life. Many places of business such as gas stations, restaurants, and bars, require the consumer to spend a minimum amount before it will accept a credit card. This is not confusing. For example, if a consumer is at a restaurant with a $5.00 minimum for credit cards, the consumer is not forced to spend over $5.00. One can purchase less than $5.00 and pay with cash or check. One can purchase more than $5.00 and then pay with cash, check, or credit card. Similarly, many places of business, including the United States government, charge a transaction

fee for using credit cards. This includes restaurants, bars, gas stations, the Drivers' Bureau, public universities, and community colleges, amongst others. There is no reason to believe the unsophisticated consumer would not have come across a credit card transaction fee throughout life. The problem in *Chuway* was the unquantified nature of the fees and interest. *See Chuway,* 362 F.3d at 947. The letter in question here, clearly quantified the fee and the fee was optional, only if one chose to pay by credit card.

Stricklin was free to pay the total due or the reduced amount by check, over the phone, or credit card. (Doc. 11-1). If she chose to pay by credit card and chose to make a payment of more than $150.00, there would be a $5.00 fee. This is not on its face a violation of law. There is no mention in the letter of the "prorating" Stricklin claims to find confusing. There is no reason to think it would be "prorated," rather Stricklin has manufactured the confusion. The letter states clearly it is a $5.00 fee per $150.00. Further, should Stricklin have paid the "settlement amount," the whole amount was well under $150.00.

Stricklin has chosen not to provide extrinsic factual evidence and so the Court cannot know whether a significant amount of the population would be confused in spite of the fact it is not plainly confusing or plainly violating the FDCPA. For the purpose of the motions for summary judgment, the Court finds it is not plainly confusing and is not a violation of the FDCPA. Even unsophisticated consumers are presented with minimum amounts to use credit cards and transaction fees if credit cards are used. There is no reason to believe this would confuse or mislead a significant portion of the population. *Fields*, 383 F.3d at 564-66.

### iii. Failure to Indicate When the Total Was Due

Stricklin argues that the letters did not state when the total was due and that this a

violation of the FDCPA because it is attempting to confuse her. Stricklin cites no authority in support of this position and the Court can find none. Stricklin argues that although there is a due date for the settlement payments, there is not a due date for the total amount if Stricklin wanted to be done with First National today. *See* Doc. 25. She further argues if the letter had said "pay this today," it would not be in violation. First National argues its structure is the same as a credit card payment. On each monthly statement there is a "total balance" and a "minimum payment."

Stricklin is correct in her assertion 15 U.S.C. § 1692e is not an exhaustive list of deceptive or misleading practices. *See Blum v. Fisher and Fisher,* 961 F. Supp. 1218, 1222 (N.D. Ill. 1997). In spite of this, Stricklin has not alleged a practice that rises to the level of unfair or misleading. There was a due date for the payments on the letter. If Stricklin desired to pay the total due (and she does not claim she did and was prohibited from doing so because of the confusion over the date), she could do so. If she did not want to pay the total and wanted to pay per the structured payment plan, she had the due dates for each payment. Indeed, had First National put the language Stricklin suggested, "pay this today," Stricklin may have argued "today" was misleading because it did not say what would happen if you paid "tomorrow" and was not defined. The Court finds for First National on this claim.

    iv.   Failure to Identify to Whom the Debt was Owed

Stricklin next argues First National failed to identify to whom the debt was now owed. First National wrote on the letter "Creditor: Jefferson Capital Systems, LLC." It later referred to its "above-referenced client." Stricklin claims the return address stating "Dept. #21377," caused her confusion as to which the real creditor is, Dept. #21377 or Jefferson Capital Systems, LLC. In support of her argument, Stricklin cites to *Sparkman v. Zwicker & Associates* in which the Eastern District of New York held there was a violation of the FDCPA when the debt collector's

16

letter identified itself as an agent of the current owner of the account but never revealed the name of the owner of the current account. 374 F. Supp. 2d 293, 300-01 (E.D. N.Y. 2005). The court held the least sophisticated consumer would not be able to ascertain who was now actually owed the money. *Id.*

First National's letter is not like that in *Sparkman*. *See Sparkman*, 374 F. Supp. 2d at 300. First National identified the creditor clearly at the top of the letter as Jefferson Capital Systems, LLC. It provided the original creditor (albeit not completely correctly) as Sprint Services. It was not unclear that Sprint was originally the creditor and now the creditor was Jefferson Capital Systems, LLC. This is very different from *Sparkman* where the name of the creditor was not included at all. *Id.* The Court finds in favor of First National.

v. Implication of Ongoing Litigation

Lastly, Stricklin argues the term "settlement offer" implied there was ongoing litigation. In support of this, Stricklin cites to the Merriam-Webster's Dictionary definition of "settlement." In conjunction with this argument, Stricklin alleges in her complaint but not in the motion for summary judgment that First National violated the FDCPA by attempting to collect on a "time-barred debt." In order to be a violation of the FDCPA, "a defendant's attempt to collect on a time-barred debt must be accompanied by actual litigation or a threat, either explicit or implicit, of future litigation." *Walker v. Cash Flow Consultants, Inc.*, 200 F.R.D. 613, 616 (N.D. Ill. 2001). Stricklin argues the use of the words "settlement offer" was a threat of litigation or alternatively intentionally misleading her to believe there was already ongoing litigation.

The Seventh Circuit recently addressed this in a case cited by both parties. *See Evory v. RJM Acquisitions Funding, LLC*, 505 F.3d 769 (7th Cir. 2007). In *Evory,* the Seventh Circuit

17

consolidated several cases on appeal to address a wide variety of FDCPA issues. *See id.* Two of the issues addressed pertained to "settlement offers." The Seventh Circuit stated,

> It is apparently common for debt collectors to send letters to consumers that say such things as (these examples are all taken from the cases before us) "we would like to offer you a unique opportunity to satisfy your outstanding debt"-"a settlement of 25% OFF of your current balance. SO YOU ONLY PAY $[____] In ONE PAYMENT that must be received no later than 40 days from the date on this letter." Or "TIME'S A WASTIN'! ... Act now and receive 30% off ... if you pay by March 31st." Or we are "currently able to offer you a substantial discount of *50% off* your Current Balance *if we receive payment by 05-14-2004* " (emphases in original). There is nothing improper about making a settlement offer. The concern is that unsophisticated consumers may think that if they don't pay by the deadline, they will have no further chance to settle their debt for less than the full amount; for the offers are in the idiom of limited-time or one-time sales offers, clearance sales, going-out-of-business sales, and other temporary discounts. In fact debt collectors, who naturally are averse to instituting actual collection proceedings for the often very modest sums involved in the consumer debt collection business, frequently renew their offers if the consumer fails to accept the initial offer.

*Id.* at 775. The Seventh Circuit went on to say it would not allow liability for violating the FDCPA to be based upon such offers because "the settlement process would disintegrate if the debt collector had to disclose the consequences of the consumer's rejecting his initial offer. If he has to say, "We'll give you 50 percent if you pay us by May 14, but if you don't, we'll probably offer you the same or even better deal later, and if you refuse that, we'll probably give up and you'll never have to pay a cent of the debt you owe," there will be no point in making offers." *Id.* at 776.

Instead, the Seventh Circuit suggested "safe-harbor" language, which, if inserted protects the debt collector from liability under the FDCPA. *Id.* The language suggested was "We are not obligated to renew this offer." *Id.* The Court went on to say, however, that there was still the potential for deception of the unsophisticated but it would have no way "of determining whether a sufficiently large segment of the unsophisticated are likely to be deceived to enable us to

conclude that the statute has been violated. For that, evidence is required, the most useful sort being the kind of consumer survey described in *Johnson v. Revenue Management Corp.,* 169 F.3d 1057, 1060-61 (7th Cir. 1999)." *Id.*

First National inserted the very safe-harbor language suggested by the Seventh Circuit. This Court finds itself in a similar position as the Seventh Circuit in *Evory* in that it has no way "of determining whether a sufficiently large segment of the unsophisticated are likely to be deceived to enable us to conclude that the statute has been violated." 505 F.3d at 776. On its face, the term "settlement offer" does not violate the FDCPA. It was not a threat of litigation nor did anything in the letter imply litigation would be commenced. Similarly, as the Court has found "settlement offer" is not a threat of litigation, it is not possible for First National to have violated the FDCPA by collecting on a time-barred debt. *See Walker*, 200 F.R.D. at 616. Again, the Court finds in favor of First National.

## **CONCLUSION**

The Court finds First National did not violate the Fair Debt Collections Practices Act in the letters sent to Stricklin. Mere speculation a collection letter confuses the unsophisticated debtor is not enough for an FDCPA plaintiff to survive an opposing debt collector's summary judgment motion. *Pettit,* 211 F.3d at 1061. When the letter does not plainly reveal it would be confusing to a significant portion of the population, the plaintiff must present evidence beyond the letter and beyond her own self-serving assertions in order to create a genuine issue of material fact for trial and avoid summary judgment. *See Taylor,* 365 F.3d at 574-75. Here both parties filed motions for summary judgment, with Stricklin alleging the violations were plain on the face of the letter.

Although the Court may have found differently had Stricklin submitted extrinsic evidence to support her claims of confusion, the Court cannot find based upon the text of the letters that a significant portion of the population would have been confused, mislead, or deceived. "A plaintiff might rest on the text of the communication, and have no other evidence to offer, and then if there was nothing deceptive-seeming about the communication the court would have to dismiss the case." *Taylor v. Cavalry Investment, L.L.C.,* 365 F.3d at 574-75. Further, "if it is apparent from a reading of the letter that not even 'a significant fraction of the population' would be misled by it ..., the court should reject it without requiring evidence beyond the letter itself." *Id.* Under this standard, a plaintiff's anecdotal proclamations of being confused will not suffice: a collection letter cannot be confusing as a matter of law or fact "unless a significant fraction of the population would be similarly misled.'" *Durkin*, 406 F.3d at 415 (internal citations omitted). Here, the Court is not dismissing the case as no motions to dismiss were filed but rather finding judgment for the Defendant First National Collection Bureau, Inc.

The Court therefore **GRANTS** defendant First National Collection Bureau, Inc.'s Motion for Summary Judgment (Doc. 15). Plaintiff Elizabeth Stricklin's Motion for Partial Summary Judgment (Doc. 25) is **DENIED.** The Court **DIRECTS** the Clerk of the Court to enter judgment in favor of the First National Collection Bureau, Inc.

**IT IS SO ORDERED.**
**DATED:** March 30, 2012

s./ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**